## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SUSAUN KMAK, as independent administrator of the estate of MICHAEL KMAK, deceased,<br><br>*Plaintiff*,<br><br>v.<br><br>SORIN GROUP DEUTSCHLAND GMBH and SORIN GROUP USA, INC.,<br><br>*Defendants*.[1] | No. 17 CV 4759<br><br>Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Susaun Kmak ("Plaintiff") brings this action against Defendants Sorin Group Deutschland GmbH, now known as LivaNova Deutschland GmbH ("LivaNova Deutschland"), and Sorin Group USA, Inc., now known as LivaNova Holding USA, Inc. ("LivaNova USA," and collectively with LivaNova Deutschland, "Defendants" or "LivaNova"), as the independent administrator of her deceased husband Michael Kmak's ("Kmak") estate. (R. 1.) Plaintiff alleges multiple counts against Defendants for damages resulting from Defendants' Sorin 3T Heater-Cooler System ("3T System") used in Kmak's 2015 open heart surgery. (*Id.*)

---

[1] Plaintiff moved to dismiss Defendant LivaNova, PLC on August 23, 2017. (R. 9.) Judge Bucklo granted the unopposed motion on September 6, 2017 and terminated LivaNova PLC as a defendant. (R. 17.) Defendants are both now a part of LivaNova: Sorin Group Deutschland GMBH is LivaNova Deutschland GmbH and Sorin Group USA, Inc. is LivaNova Holding USA, Inc. (R. 11 at 1.)

Before the Court is Defendants' motion to dismiss Counts I through VII of Plaintiff's nine-count Complaint.² (R. 12.) For the following reasons, the Court grants in part with prejudice and grants in part without prejudice Defendants' motion to dismiss.

## BACKGROUND

According to Plaintiff,³ Decedent Kmak underwent open heart surgery, specifically "coronary artery bypass graft surgery with aortic valve replacement," at the University of Chicago Medical Center in Chicago, Illinois, on June 25, 2015. (R. 1 at ¶ 1, 36.) Defendants' 3T System was purportedly used to assist in the heating and cooling of Kmak's blood during the procedure. (*Id*.) Plaintiff alleges that the medical device exposed Kmak to non-tuberculosis Mycobacteria and thus contributed to or caused his deteriorating condition after the surgery. (*Id*. at ¶ 1, 14, 20, 34, 37.) Kmak passed away at Franciscan St. Anthony Hospital in Michigan City, Indiana, on July 18, 2016. (*Id*. at ¶ 41.)

LivaNova marketed and sold the 3T System for use during certain surgeries in operating rooms in the United States. (R. 11 at ¶ 9, 10.) Further, a Food and Drug Administration ("FDA") "510(k) Premarket Notification was submitted for the 3T System, the 3T System is a Class II device, and its Intended Use is 'to provide temperature controlled water to heat exchanger devices (cardiopulmonary bypass heat exchangers, cardioplegia heat exchangers, and thermal regulating blankets) to warm or cool a patient during cardiopulmonary bypass procedures lasting six (6) hours or less.' " (*Id*. at ¶ 11.)

---

² On November 28, 2017, the Executive Committee reassigned this case to this Court. (R. 29.)

³ The following facts are taken from the Complaint and are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

The FDA posted a Class II Device Recall of the 3T System on or about July 15, 2015 that lists the "Manufacturer['s] Reason for Recall" as "[p]otential colonization of organisms, including Mycobacteria, in Sorin Heater Cooler Devices, if proper disinfection and maintenance is not performed per Instructions for Use." (R. 11 at ¶ 20; R. 1-1 at 8-10.) Further, the FDA issued a Warning Letter to Defendants on or about December 29, 2015 regarding inspections conducted at LivaNova's facilities in the United States and Germany. (R. 11 at ¶ 24; R. 1-1 at 24-30.) "These inspections revealed that your firm's devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820." (R. 1-1 at 24.) The FDA noted several other violations in the warning letter. (*Id*. at 24-30.)

The University of Chicago Medical Center sent a letter to Plaintiff and/or Kmak on October 19, 2016 regarding the potential infection risk associated with the use of the 3T System in Kmak's cardiac surgery. (R. 1 at ¶ 14; R. 1-1 at 1.) Plaintiff does not otherwise describe or make factual allegations concerning LivaNova's promotional materials, statements or activities.

Plaintiff filed this lawsuit on June 26, 2017, as the administrator of decedent Kmak's estate. (R. 1.) Plaintiff alleges nine Counts against Defendants in her Complaint: Count I, negligence; Count II, strict product liability; Count III, breach of express warranty; Count IV, breach of implied warranty; Count V, negligent misrepresentation; Count VI, misrepresentation by omission; Count VII, violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (the "ICFA"); Count VIII, under the Illinois Wrongful Death Act ("Wrongful Death Act"); and Count IX, under the Illinois Survival Act ("Survival Act"). (R. 1 at 10-19.) Plaintiff

3

seeks actual damages, but no punitive damages. (*Id*. at 19.) Before the Court is the Defendants' motion to dismiss Counts I through VII of Plaintiff's Complaint. (R. 12.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (referencing Fed. R. Civ. P. 12(b)(6)); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016); *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *see also Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." *Camasta*, 761 F.3d 732 at 739 (citing *Twombly,* 550 U.S. at 555).

4

Beyond the requirements of Rules 12(b)(6) and 8(a)(2), Rule 9(b)[4] requires all allegations of fraud or mistake to be "stated with particularity." *Borsellino v. Goldman Sachs Gro., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing Fed. R. Civ. P. 9(b)). Specifically, Rule 9(b) requires a party to describe the "who, what, when, where, and how of the fraud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *see AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). The particularity and specificity requirements of Rule 9(b) "force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mutual Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999). Instead, "the rule requires the plaintiff to conduct a pre[-]complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta*, 761 F.3d at 738 (citing *Ackerman,* 172 F.3d at 469–70).

## ANALYSIS

Defendants move to dismiss Counts I through VII of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). (R. 12, 13.) The Court reviews in turn (I) Count I for negligence and Count II for strict product liability; (II) Count III for breach of express warranty; (III) Count IV for breach of implied warranty; (IV) Count V for negligent misrepresentation and Count VI for misrepresentation by omission; and (V) Count VII for violation of the Illinois Consumer Fraud and Deceptive Business Practice Act. The parties do not dispute that Illinois law governs the substance of their claims.

---

[4] "[A] complaint that satisfies the heightened pleading standards of Rule 9(b) necessarily satisfies the pleading standards of Rule 12(b)(6)." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016).

**I.     Counts I and II: Negligence and Strict Product Liability**

Defendants move to dismiss Counts I and II on the ground that an independent administrator of a decedent's estate does not have an independent cause of action for negligence or strict liability. (R. 13 at 3-6.) Defendants argue that Plaintiff may only bring those claims under the Wrongful Death Act or the Survival Act (Counts VIII and IX, respectively), and therefore that Counts I and II are duplicative of Counts VIII and IX. (*Id*.)

Plaintiff argues that she "is pleading the negligence and strict liability counts in the alternative, as well as using the Wrongful Death and Survival causes of action as avenues for which [sic] to pursue claims after the decedent's death." (R. 20 at 3.) Plaintiff maintains that her Complaint adequately pleads Counts I and II through the Wrongful Death Act and the Survival Act. (*Id*. at 4.) She further urges the Court not to dismiss these counts "on pure technicalities as the rules are designed to ensure that claims are determined on the merits." (*Id*.)

Although many actions at common law were neither assignable nor survived the death of a claimant, modern statutes have changed this area of law and provide that certain actions survive the death of a claimant and pass to the claimant's estate. *See*, *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 692 N.E.2d 269, 272 (1998) ("In turn, the personal representatives of a decedent were essentially perceived as assignees of the decedent's property."); *N. Chicago St. R. Co. v. Ackley*, 49 N.E. 222, 224 (Ill. 1897) ("By the common law, actions arising out of torts did not in general survive.") The parties do not dispute that the negligence and strict product liability causes of action would abate upon death were it not for a statutory provision holding otherwise.

Through the Survival Act, Illinois law allows negligence and strict product liability claims to survive death. The statute specifically provides that "actions to recover damages for an

injury to the person" survive. 755 Ill. Comp. Stat. 5/27-6. "The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1029 (Ill. 1996) (citing *Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568 (Ill. 1989); *Nat'l Bank of Bloomington v. Norfolk & Western Ry. Co.*, 383 N.E.2d 919 (Ill. 1978)). "As such, a Survival Act claim is a derivative action based on injury to the decedent, but brought by the representative of a deceased's estate in that capacity." *Id*. In other words, the Survival Claim Act "preserves for the representative of the decedent those actions at common law which had already accrued to the decedent at the time of his death." *Awalt v. Marketti*, 2012 WL 1161500, *5 (N.D. Ill. Apr. 9, 2012) (citations omitted).

Here, Counts I and II, negligence and strict product liability claims, respectively, are Kmak's personal injury claims. 755 Ill. Comp. Stat. 5/27-6 (listing "actions to recover damages for an injury to the person" as a survivable action). Plaintiff can thus bring Kmak's negligence and strict product liability claims against Defendants under the Survival Act in Kmak's stead as his estate administrator. As repeatedly stated throughout the case law, however, the claims that survive do not become separate claims but are brought by the deceased's estate administrator through the Survival Act. *Awalt*, 2012 WL 1161500 at *5 (A "claim under the Survival Act is a derivative one; it is brought by the decedent's representative but based on the injury to the decedent.") (citing *Advincula,* 678 N.E.2d at 1029). Defendants are therefore correct that Counts I and II cannot stand as separate claims because Plaintiff must bring them through Count IX as a survival action.

The Survival Act operates somewhat differently from the Wrongful Death Act. The Wrongful Death Act provides that "[w]henever the death of a person shall be caused by [a]

7

wrongful act, neglect or default" the person who or the company/corporation which is responsible "shall be liable to an action for damages, notwithstanding the death of the person injured." 740 Ill. Comp. Stat. 180/1. "[U]nlike the Survival Act, the Wrongful Death Act does not provide for the survival of a right of action the decedent had for damages he incurred. It rather governs the right of the surviving spouse and next of kin to recover for their own pecuniary injuries suffered as a consequence of the death of the decedent." *Erickson v. Baxter Healthcare, Inc.*, 94 F. Supp. 2d 907, 913 (N.D. Ill. 2000) (citing *Wyness*, 546 N.E.2d at 571). The Wrongful Death Act "independently create[s] a statutory cause of action." *Awalt*, 2012 WL 1161500 at *5.

Here, Plaintiff properly brings a claim under the Wrongful Death Act as the estate administrator for the benefit of the surviving spouse and next of kin.[5] While the statute provides the cause of action, it does not supply the underlying legal theory of wrongful death. Plaintiff will have to prove the elements of negligence and strict product liability in order to prove her Wrongful Death "claim." Defendants are therefore again correct that Counts I and II cannot stand as separate claims because Plaintiff must bring them through Count VIII under the Wrongful Death Act.

As for Defendants' claim that Counts I and II are duplicative of Counts VIII and IX, the former are the underlying legal theories for the latter. Indeed, Counts I and II plead negligence and strict product liability legal theories that Plaintiff will use to assert claims under the Wrongful Death and Survival acts. Accordingly, Plaintiff has no independent claims for negligence and strict product liability, nor can she plead these counts in the alternative. She must

---

[5] Every wrongful death action "shall be brought by and in the names of the personal representatives of such deceased person, and…the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 Ill. Comp. Stat. 180/2 (a).

8

use the statutory provisions of the Survival Act and the Wrongful Death Act to plead the underlying legal theories of negligence and strict product liability. The Court grants Defendants' motion to dismiss Counts I and II with prejudice because Plaintiff cannot bring these as stand-alone claims. The Court gives Plaintiff leave to amend Counts VIII and IX to include these theories.

## II.     Count III: Breach of Express Warranty

Defendants move to dismiss Count III because Plaintiff did not buy the medical device at issue and therefore privity does not exist. (R. 13 at 6-7.) Further, Defendants argue that Plaintiff has not pled the necessary elements for a breach of express warranty claim. (*Id*. at 7-9.)

Under Illinois law, to "state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin v. Star Sci., Inc*., 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015) (citing *Indus. Hard Chrome, Ltd. v. Hetran, Inc*., 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999) (applying Illinois law)); *see also Medline Indus., Inc. v. Ram Med., Inc*., 892 F. Supp. 2d 957, 968 (N.D. Ill. 2012) (finding that a plaintiff must plead and prove that the seller made an affirmation of fact that was part of the basis of the bargain between the parties) (citing *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc*., 865 N.E.2d 334, 340 (Ill. 2007)); *Mydlach v. DaimlerChrysler Corp*., 875 N.E.2d 1047, 1057 (Ill. 2007) (defining an express warranty as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain") (citing U.C.C. § 2-313).[6] "Since express warranties are contractual in nature, the language of the warranty itself is what controls and

---

[6] Illinois had adopted the U.C.C. and the parallel citation is 810 Ill. Comp. Stat. 5/2-313.

9

dictates the obligations and rights of the various parties." *Medline*, 892 F. Supp. 2d at 968 (citing *Oggi Trattoria*, 865 N.E.2d at 340); *see also Heisner ex rel. Heisner v. Genzyme Corp.*, 2008 WL 2940811, *8 (N.D. Ill. July 25, 2008) ("Under an express warranty, the language of the warranty itself dictates the obligations of the parties.").

Generally, a party must have privity of contract in order to bring a cause of action for breach of express warranty. *Canadian Pac. Ry. Co. v. Williams–Hayward Protective Coatings*, 2005 WL 782698, *15 (N.D. Ill. Apr. 6, 2005) (applying Illinois law); *see also Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 838 (1988) ("[A]n express warranty is a creature of contract; an implied warranty is imposed by law [and]….[i]n this difference between express and implied warranty can arguably be found justification for a differing treatment of the lack of privity when express-warranty claims are made by remote buyers or other persons.") (citations omitted). The exception to the privity rule is if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs."[7] *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007); *see Rosenstern v. Allergan*, Inc. 987 F. Supp. 2d at 805 (quoting *In Re McDonald's*). "In other words, manufacturer documents[8] given directly to the buyer prior to a purchase may give rise to an express warranty because the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise." *Rosenstern*, 987 F. Supp. 2d at 805 (citing *Canadian Pac. Ry. Co.*, 2005 WL 782698 at *15).

---

[7] Defendants claim that this exception only applies to implied warranties under Illinois law and cite *Rosenstern* for this premise. (R. 13 at 7.) The Court does not read the case this way.

[8] "In the context of a buyer purchasing a product from a dealer and not the manufacturer, Illinois courts have concluded that brochures, documents, and advertisements may be the basis of [an] express warranty." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2005 WL 782698, *15 (N.D. Ill. Apr. 6, 2005) (citing *Connick v. Suzuki Motor Co.*, 656 N.E.2d 170, 177 (Ill. App. Ct. 1995), *aff'd in part, rev'd in part*, 675 N.E.2d 584 (Ill. 1996)).

Here, however, Plaintiff does not allege that she bought anything—either from the manufacturer or any dealer. The 3T System was used during Kamk's surgery but neither Plaintiff nor Kmak was a buyer of the medical device. Further, Plaintiff has not alleged that she reviewed any manufacturer documents—not even brochures or advertisements—prior to the use, what more the purchase, of the 3T System for Kmak's surgery. Plaintiff has not alleged the required privity to bring an express warranty claim.

In addition, she has not pled facts sufficient to support a claim for a breach of express warranty. A plaintiff alleging a breach of express warranty "must state the terms of the warranty or attach it to the complaint." *Baldwin*, 78 F. Supp. 3d at 739 (citing *Northern Ins. Co. of N.Y. v. Silverton Marine Corp.*, 2010 WL 2574225, *6 (N.D. Ill. June 23, 2010) (applying Illinois law). Plaintiff's "allegations do not sufficiently set out the terms of a single specific 'affirmation of fact or promise' related to" the 3T System. *Baldwin*, 78 F. Supp. 3d at 740 (citation omitted). Plaintiff generally pleads that Defendants marketed and advertised the 3T System but alleges nothing more specific. (R. 1 at 12.) Accordingly, the Court grants Defendants' motion to dismiss Count III of the Complaint without prejudice and grants Plaintiff leave to amend her Complaint.

## III.  Count IV: Breach of Implied Warranty

Defendants move to dismiss Count IV on the ground that Plaintiff has failed to state a claim. (R. 13 at 9-11.) According to Defendants, Plaintiff has failed to allege facts sufficient to support claims for the breach of an implied warranty of merchantability or an implied warranty of fitness for a particular purpose. (*Id.* at 10-11.)

Under Illinois law, to state a claim for a breach of an implied warranty of merchantability, "a plaintiff must allege that '(1) the defendant sold goods that were not

merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.' " *Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (citing *Indus. Hard Chrome, Ltd.,* 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2–314)). "To be merchantable, the goods must be, among other things, fit for the ordinary purpose for which the goods are used." 810 ILCS 5/2–314. Here, Plaintiff's Complaint does not allege the third factor of notice. As Defendants correctly point out, Plaintiff does not discuss notice anywhere in her Complaint. The Court grants Defendants' motion to dismiss Count IV of her Complaint on this ground without prejudice.

As for Plaintiff's other implied warranty theory, to state a claim for a breach of an implied warranty of fitness for a particular purpose under Illinois law, a plaintiff "must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Corwin*, 74 F. Supp. 3d 883 at 891 (citing *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d at 957 (N.D. Ill. 2007)); 810 ILCS 5/2–315; *see also S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179, 191 (Ill. App. Ct. 2010) (requiring, for an implied warranty of fitness for a particular purpose claim, that the seller at the time of contracting have reason to know the particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Gerk v. CL Med. Sarl*, 2015 WL 7002802, *2 (C.D. Ill. Nov. 10, 2015)

(citing 810 Ill. Comp. Stat. 5/2–315). In other words, "[n]o warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product. *Rosenstern*, 987 F. Supp. 2d at 804 (citing *Wilson v. Massey–Ferguson, Inc.*, 315 N.E.2d 580, 582 (Ill. 1974)).

Here, Plaintiff alleges that "[w]hen the Sorin 3T System was used during decedent's heart procedure, the system was being used for the original purposes for which it was approved and intended." (R. 1 at ¶ 62.) Alleging that the medical device was used for its original purpose is the opposite of alleging that the product was used for a purpose different than its ordinary use, as Illinois law requires for an implied warranty of fitness for a particular purpose claim.[9] *See Gerk*, 2015 WL 7002802 at *2; *Rosenstern*, 987 F. Supp. 2d at 804 ("No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product."). Further, Plaintiff fails to allege either of the other two factors: the buyer's reliance on the seller's skill and judgment, and the seller's awareness of that reliance. *Corwin*, 74 F. Supp. 3d 883 at 891. Accordingly, the Court grants without prejudice Defendants' motion to dismiss Count IV of her Complaint on this ground as well and grants Plaintiff leave to amend her Complaint.

## IV. Counts V and VI: Negligent Misrepresentation and Misrepresentation by Omission

Defendants move to dismiss Counts V and VI because they assert that Plaintiff does not state claims for which relief may be granted and her claims are not pled with particularity. (R. 13 at 11-17.) Defendants point out that Count VI's claim of misrepresentation by omission is not an independent claim under Illinois law. (*Id*. at 14-15.) Further, Defendants argue that Counts V and VI are duplicative. (*Id*. at 15-16.) According to Defendants, Plaintiff fails to allege the requisite facts to support a claim for misrepresentation by omission, negligent misrepresentation,

---

[9] Plaintiff is welcome to plead both of her theories of breach of implied warranty (merchantability and fitness for a particular purpose), even if they require inconsistent factual allegations, but she must properly allege the elements of her claims. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

13

or fraudulent misrepresentation; and also fails to plead such facts with particularity as required by Rule 9(b), which Defendants argue applies because Plaintiff's claim "sounds in fraud." (*Id*. at 12-14, 16-17.)

Plaintiff concedes that misrepresentation by omission is a type of negligent misrepresentation claim and asks the Court to view the facts pled in Count VI as additional facts in support of Count V. (*Id*. at 9-10, 11.) Because Plaintiff correctly admits that misrepresentation by omission is a subset of negligent misrepresentation and not an independent claim, the Court grants Defendants' motion to dismiss Count VI of the Complaint with prejudice.

With regard to Count V, to state a claim for negligent misrepresentation, "a party must allege: '(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.' " *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006)).

Here, Plaintiff has recited the legal elements but has not supported them with anything more than conclusory allegations. Plaintiff has not identified, for example, what "false statement[s] of material fact" Defendants have made. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *see also Thulin*, 771 F.3d at 997. While Plaintiff is entitled to the Court accepting her factual allegations as true, she must allege enough facts to support her claim. *Roberts*, 817 F.3d at 564 (7th Cir. 2016) (Courts must "accept all well-pleaded facts as true and draw reasonable

inferences in the plaintiffs' favor."). Even under Rule 8, Plaintiff has not stated a claim.[10] Accordingly, the Court grants Defendants' motion to dismiss Count V of the Complaint without prejudice and grants Plaintiff leave to amend her Complaint.

## V.     Count VII: Illinois Consumer Fraud and Deceptive Business Practices Act

Lastly, Defendants move to dismiss Count VII because Plaintiff has failed to state a claim upon which relief can be granted. (R. 13 at 17-20.) Defendants argue that Plaintiff lacks standing to bring a claim under the ICFA, has failed to plead the necessary elements to state such a claim, and further has failed to plead this count with particularity. (*Id* at 18-20.)

The ICFA's intent is "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Camasta*, 761 F.3d at 739 (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (Ill. 2002))). Plaintiff is correct that the statute provides that "[a]ny person who suffers actual damage as a result of a violation of this Act…may bring an action against such person." 815 Ill. Comp. Stat. 505 10a(a). An ICFA plaintiff, however, "generally must allege that he or she is a 'consumer' in order to state an ICFA claim." *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017); *see Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568 (7th Cir. 2017) (citing *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003)). The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise[11] not for resale in the

---

[10] The Court thus does not address the heightened standard of a Rule 9(b) pleading.

[11] Under the ICFA, the definition of "merchandise" is "not a particularly narrow one." *Liston*, 254 F. Supp. 3d at 1006. It includes "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 Ill. Comp. Stat. § 505/1(b).

ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Even reviewing the facts in the light most favorable to Plaintiff, she has not alleged that she bought the 3T System for her or her household's use.

Although Plaintiff is not a consumer, "courts have also allowed non-consumers—both business and nonbusiness plaintiffs alike—to go forward with the ICFA claims where they satisfy the 'consumer nexus' test." *Liston*, 254 F. Supp. 3d 989, 1005–06; *see Bank One Milwaukee*, 783 N.E.2d at 221; *Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 911–12 (N.D. Ill. 2012). As the Seventh Circuit recently stated, "state courts have held [that the ICFA] applies to consumer transactions or those having a consumer nexus." *Sabrina Roppo*, 869 F.3d at 595. To satisfy the consumer nexus test, a plaintiff must show "(1) that [her] actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations…concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Liston*, 254 F. Supp. 3d 989, 1006 (citing *Roppo*, 100 F. Supp. 3d at 651 (quoting *Brody v. Finch Univ. of Health Sci./The Chi. Med. Sch.*, 698 N.E.2d 257, 269 (Ill. App. Ct. 1998))). "Put another way, a non-consumer plaintiff must allege 'conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.' " *Roppo*, 100 F. Supp. 3d at 651 (N.D. Ill. 2015) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989).

Here, Plaintiff has generally alleged the purported risks associated with the 3T System, but she does not link her factual assertions to the consumer context as required by the ICFA consumer nexus test. Plaintiff does not allege, for example, how her "actions were akin to a

16

consumers' actions" (first factor), nor does she explain how her "requested relief," monetary damages for her husband's death, "would serve the interests of consumers" (fourth factor). Plaintiff does not successfully assert standing under the ICFA.

Even assuming Plaintiff's standing under the ICFA, Plaintiff has not alleged an ICFA claim—both by failing to plead a claim and failing to do so with the requisite particularity. "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.' " *Camasta*, 761 F.3d at 739 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). Plaintiff does state in her Complaint that "Defendants' deceptive acts and practice occurred during a course of conduct involving trade or commerce." (R. 1 at ¶ 86.) Plaintiff fails to allege facts, however, for the remaining elements: what deceptive acts took place (first factor) and that Defendants intended[12] for the public, including Plaintiff and Kmak, to rely on those deceptive acts (second factor).

Further, because of the fraud element, a higher pleading standard applies to Plaintiff's ICFA claim. *See Sabrina Roppo*, 869 F.3d at 596 n.80 ("ICFA claims are evaluated under Rule 9(b)'s heightened pleading standard." (citation omitted)); *Camasta*, 761 F.3d at 736–37 ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (finding that heightened pleading requirement of Rule 9(b) applied to a claim

---

[12] While intent, like "other conditions of a person's mind[,] may be alleged generally," Plaintiff still must make this factual allegation in her Complaint to complete her ICFA claim. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

"sounding in fraud"). Indeed, Plaintiff concedes that the higher pleading standard of Rule 9(b) applies to this claim. (R. 20 at 10.)

While Rule 9(b) "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.' " *Camasta*, 761 F.3d at 737 (citations omitted). Plaintiff need not "provide the precise date, time, and location" of the misrepresentation, nor include "every word," but must offer more than blanket statements that deception took place. *Id.*; *see also Twombly,* 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions.").

Here, Plaintiff does not connect the facts to her claims nor does she plead with the required particularity. Plaintiff re-alleges the factual introduction of her Complaint but does not link these facts to the elements of her ICFA claim. Further, Plaintiff's facts do not substantiate her claims. Plaintiff states that she references recall notices and warning letters with the specific content and dates of these communications[13]—however, all of these documents were issued *after* Kmak's surgery. Plaintiff does not allege or provide factual support for her claim that Defendants made representations to Plaintiff *prior* to Kmak's surgery that would constitute unfair or deceptive trade practices. She only offers information about the potential issues with the medical device, but gives no comparison to how Defendants presented the product.

---

[13] In fact, they are attached as exhibits to her Complaint. (R. 1-1.) In ruling on a Rule 12(b)(6) motion, district courts may consider documents attached to or referenced in the pleadings, as long as the documents are referred to in the complaint and central to the claims. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

With regard to Plaintiff's allegations of omissions related to the ICFA, the Illinois Supreme Court has held that "to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant," and "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions.... A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *Darne v. Ford Motor Co.*, 2015 WL 9259455, *9 (N.D. Ill. Dec. 18, 2015) (quoting *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009).

Plaintiff's Complaint does not establish her standing to bring a claim under the ICFA, nor does it state the necessary elements to state a claim under that law with the requisite particularity of Rule 9(b). Accordingly, the Court grants Defendants' motion to dismiss Count VII without prejudice and grants Plaintiff leave to amend her Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants in part with prejudice and grants in part without prejudice Defendants' motion to dismiss. The Court grants Defendants' motion to dismiss with prejudice with regard to Counts I, II, and VI. The Court grants Defendants' motion to dismiss without prejudice with regard to Counts III, IV, V, and VII. The Court also grants Plaintiff leave to file a First Amended Complaint consistent with this Opinion by no later than January 8, 2018.[14]

**Dated:** December 12, 2017

**ENTERED:**

*[signature]*

AMY J. ST EVE
United States District Court Judge

---

[14] When a court finds that a complaint is deficient, it may grant the plaintiff leave to amend the complaint. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("A plaintiff is entitled to amend the complaint once as a matter of right.") (citing Fed. R. Civ. P. 15(a)).